## UNITED STATES v. DUPIRE.

### No. 11268.

Circuit Court of Appeals, Eighth Circuit.

Feb. 21, 1939.

946

Maurice M. Milligan, U. S. Atty., of Kansas City, Mo., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Fendall Marbury, Sp. Asst. to Atty. Gen., and Thomas E. Walsh, Atty., Department of Justice, of Washington, D. C.

Lawrence E. Goldman and Frank R. Daley, both of Kansas City, Mo., for appellee.

Before GARDNER, SANBORN and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

The appellee, plaintiff below, entered the military service of the United States on May 6, 1918, and was honorably discharged therefrom on August 29, 1918; while in the service he was granted war risk insurance in the amount of $10,000. This policy was permitted to lapse for non-payment of the monthly premium which fell due September 1, 1918. Effective May 1, 1924, he reinstated $5,000 of this term insurance, and, in June, 1927, converted the same into a five year convertible term policy. In 1932 he changed this form of insurance into a full life policy, which contained a total permanent disability provision. Upon the converted contract, premiums were paid up to the date of the trial in February, 1936. Plaintiff's claim for insurance under the total permanent disability provision was denied by the Insurance Claims Council July 16, 1932. Suit was filed June 25, 1935. The jury returned a verdict in favor of plaintiff in the sum of $1,265, and the court entered judgment for that amount, "being the accrued installment benefits found to be due to the plaintiff commencing on, from, and after July 1, 1932 to the date of trial". It was found that the plaintiff became permanently and totally disabled on July 1, 1932.

The government, by its amended answer, at first contended that if plaintiff was suffering from any impairment of mind or body, that disability existed prior to the time his contract of insurance was reinstated, and was, therefore, not insured against. That defense however is barred by the incontestable clause of the policy (United States v. Patryas, 7 Cir., 90 F.2d 715; affirmed 303 U.S. 341, 58 S.Ct. 551, 82 L.Ed. 883), and is not urged here in the brief submitted. Therein appellant states, as the question presented, "whether there was any substantial evidence to show that the plaintiff became totally and permanently disabled on July 1, 1932". The error urged is the action of the trial court in overruling the government's motion for a directed verdict at the close of the evidence.

The plaintiff, a coal miner by occupation, had submitted to an operation for the removal of a growth on his left leg before he entered the military service. During

service, while engaged in "scrimmage", he fell into a hole and injured the leg. He was discharged from the service upon a certificate of disability because of this leg condition. After discharge he resumed work until February, 1923, when his leg was amputated. It had begun to swell, and amputation was performed upon diagnosis of sarcoma. From that date the stump of his leg gave him great pain and trouble. He was unable to wear an artificial leg continuously. He worked at times, but was unable to pursue any substantially gainful occupation continuously. This is conceded in appellant's brief in the following language: "While it was not shown that plaintiff had been regularly and gainfully employed for any substantial periods, he did do some carpenter work and operated to some extent at least two trucks which he owned on different occasions".

He developed a highly nervous condition. In his petition he alleges that he became totally and permanently disabled "by reason of amputated leg, chronic neurosis, extreme nervousness, chronic rhinitis, and general debility." The trial judge took great pains to arrive at a just determination. He postponed passing upon the motion for new trial until the transcript of the evidence could be obtained and examined. In denying the motion, among other things, he said: "The testimony was that his left leg was amputated in the year 1923. At that time, and for a long time previously thereto he had suffered from an inflammation of his nasal passages, technically called rhinitis. The evidence was that he was nervous, and that the inflammation of his nasal passages was a chronic catarrhal condition, and that it was quite extreme in its symptoms. There was evidence that the amputation of his left leg above the knee, although successful from a surgical standpoint, nevertheless left symptoms which indicated deterioration of bone matter. The evidence was not specific on this question, but the stump of his limb was in a constant state of irritation and extreme nervousness, which manifested itself in jerking of the flesh and causing the plaintiff to fall. At these times he suffered great pains, etc. This was evidenced, not only from his own testimony, but from his appearance of suffering as observed by witnesses".

■ In the government brief counsel say that plaintiff failed to sustain the burden of establishing that he became totally and permanently disabled because "his principal disability was shown to be an amputated left leg, and it has been frequently held that the loss of a leg does not constitute a total permanent disability". And this is undoubtedly true. Thompson v. United States, 8 Cir., 65 F.2d 897; United States v. Adcock, 6 Cir., 69 F.2d 959; United States v. Mayfield, 10 Cir., 64 F.2d 214; United States v. Weeks, 8 Cir., 62 F.2d 1030; Hanagan v. United States, 7 Cir., 57 F.2d 860.

Appellant's case, in a nutshell, is thus further stated in its brief: "It is our opinion that the loss of a leg between the knee and ankle in the absence of other complications cannot be regarded as a total and permanent disability".

This is a fair and correct statement of the law, but does not comport with the situation presented by the record. While the loss of appellee's leg, and the severe and continuous suffering he has experienced from the condition of the stump, is an important element of the disability pleaded, it is not only the only element, but is attended by other serious complications. It is apparent that his physical condition has gradually and steadily deteriorated until, on the date found, he was totally and permanently incapacitated for following continuously any substantially gainful occupation.

■ ■ As said by this court in United State v. Rice, 8 Cir., 72 F.2d 676, "whether loss of a leg constitutes 'total disability,' within war risk policy, depends upon facts in particular case". And further: "Decisions in this and other jurisdictions which have been cited by counsel for the government in conceived opposition to this view may be successfully distinguished upon their facts". Loc.cit. 678. Compare Wood v. United States, D.C., 28 F.2d 771, and United States v. Ford, 10 Cir., 71 F.2d 83. The physical and mental condition of appellee to which witnesses have testified is further convincingly presented in a diagnosis of December 1, 1932, set out in the government brief:

"Diagnosis: Chronic prostatitis; chronic epididymitis, right; atrophic rhinitis with ozena; chronic ethmoiditis; chronic pharyngitis, moderate and permanent; amputation left femur middle one-third; osteitis end stump of left femur, slight spur formation left femur (sensitive stump); borderline mental defective".

948

■ The definitions of these medical terms, based on Gould's Medical Dictionary (1935), are set out in appellee's brief and will not be repeated here. It is sufficient to say that the conditions found to exist in combination furnish substantial support for the verdict of the jury. "In determining whether there was any evidence to sustain a verdict for the plaintiff, all facts that the evidence supporting his claim reasonably tends to prove should be assumed as established, and all inferences fairly deducible from them should be drawn in his favor". Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; Asher v. United States, 8 Cir., 63 F.2d 20.

■■ Generally the question of total and permanent disability is for the jury under appropriate instructions. United States v. Crume, 5 Cir., 54 F.2d 556. And the appellate court will not consider the weight of the evidence if it is substantial. Booth v. Gilbert, 8 Cir., 79 F.2d 790.

■ It appears that appellee continued to do some work, at different times, and made a substantial effort to make a living. He also paid the premiums upon his policy as they matured. We have here no case of a claim presented long after the policy had lapsed. United States v. Rice, 8 Cir., 72 F.2d 676, loc.cit. 677, 678. "Actual performance of work by insured in war risk policy does not necessarily negative permanent and total disability". United States v. Harris, 4 Cir., 66 F.2d 71.

In our opinion the judgment below should be affirmed and it is so ordered.

A true copy.